UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 05-10898-DPW

JOHN BALDWIN,

    Plaintiff,

v.

BRUCE TESSIER, *et al.*,

    Defendants.

## STATEMENT OF UNDISPUTED FACTS
## PURSUANT TO LOCAL RULE 56.1

1.    The *pro se* plaintiff, John Baldwin, is an inmate who was lawfully committed to the Massachusetts Treatment Center ("MTC") on June 16, 2004, pending a disposition of the Commonwealth's petition for commitment of a sexually dangerous person, pursuant to G.L. c.123A, §§1, 12-16.  See Petition for Commitment (without attachments), Order, and Findings on Probable Cause Hearing (without attachments), true and accurate copies of which are attached hereto as Exhibit A.  At all times relevant to his Complaint, however, the plaintiff was lawfully incarcerated within the Department of Correction ("Department") and housed at the maximum security facility, Massachusetts Correctional Institution – Cedar Junction ("MCI-CJ"), located in Walpole, Massachusetts.  Complaint, ¶3.

2.    The served defendants[1] are Correction Officer Bruce Tessier, Lieutenant Patrick Smith and Caption Thomas Barroni, all employed by the Department as correctional staff at MCI-CJ at all times relevant to this Complaint.  Complaint, ¶4-6.

---

[1] The summons intended for defendant Brian Ford was returned unexecuted.  See Docket Entry No. 12.  To date, the plaintiff has not completed service on Mr. Ford.  Notwithstanding the foregoing and without waiving defendant Ford's right to personal service, the defendants herein state that all claims should be dismissed against Mr. Ford, as the arguments on the merits as discussed below apply equally to him.

3. On April 2, 2003, the plaintiff was housed in the Special Management Unit (also known as Block 10 or the AA Unit) at MCI-CJ. Complaint, ¶8-9; See Internal Bed History, a true and accurate copy of which is attached hereto as Exhibit B.

4. The plaintiff left his cell, at which time the defendants attempted to escort him to new housing in general population. Complaint, ¶10; See Investigation SI-03-24, a true and accurate copy of which is attached hereto as Exhibit C, at p.1.

5. The defendants were required to drag the plaintiff during the escort. Complaint, ¶10; See Exhibit C at pp.1-2.

6. The plaintiff alleges in his Complaint that defendants Tessier, Ford and Smith "used excessive force and physically assaulted" him during the incident. Complaint, ¶12. More specifically, the plaintiff alleges that defendant Ford struck him in the hip, causing a bruise; that defendant Tessier strangled him with a shirt, causing marks on his neck; and that all three defendants further assaulted him, causing swollen eyes, bruising to his face and right hip, and cutting his ankle with leg irons that were applied too tightly. Id. at ¶¶13-15.

7. The plaintiff alleges that defendant Barroni failed to intervene during the assault. Complaint, ¶16.

8. Upon his arrival at his new unit, after the incident, the plaintiff was examined by Registered Nurse Adalgisa Ortiz. See Incident Report dated April 2, 2003 attached to Exhibit C. Nurse Ortiz noted in her report:

> [Inmate] seen in cell. facial redness noted. No bruises or lacerations noted. Superficial scratch mark on the neck ([left] side of neck, no bleeding). Facial redness noted on [inmate] while he was in AA unit.

<u>Id</u>.  According to the investigation, Nurse Ortiz advised the investigator that she had previously noted facial redness "days before" the plaintiff's allegations of a staff assault on April 2, 2003. <u>Id</u>. at p.3.

9.	The plaintiff was next seen by Nurse Practitioner Kara K. Erdody on the following day, April 3, 2003.  <u>See</u> Medical Progress Notes, a true and accurate copy of which is attached hereto as Exhibit D; <u>see</u> <u>also</u> Progress Note dated April 3, 2003, attached as part of Exhibit C.  Nurse Erdody stated that she was seeing the patient for three reasons: (1) he had submitted a sick slip requesting Mylanta for stomach upset; (2) he wanted renewal of his orders for a cane and knee sleeve (which had already been done); and (3) he was complaining of "getting messed up" during his transport from the SMU to his new housing unit on April 2, 2003. <u>Id</u>.  Nurse Erdody noted the plaintiff was moving all of his extremities in excited gestures during the interview.  <u>Id</u>.  She further noted "facial area around cheeks, forehead, nose [with] redness, no abrasions, no ecchymosis, no hematomas."  <u>Id</u>.  She observed "[left] neck [with] superficial area mild bruising/scratch marks, no bleeding."  <u>Id</u>.  Finally, her examination found his back, chest and lower extremities to be clear of injury.  <u>Id</u>.  Her examination concluded "no significant injuries noted" and she ordered the Mylanta he requested.  <u>Id</u>.

10.	On April 7, 2003, the plaintiff submitted a sick slip stating "I wish to see someone for the bad headaches, pain in my [left] shoulder and the numbness up & down my spine and in [left] shoulder."  <u>See</u> Sick Call Request Forms, a true and accurate copy of which is attached hereto as Exhibit E; <u>see</u> <u>also</u> Form dated April 7, 2003 attached as part of Exhibit C.

11.	Also on April 7, 2003, the plaintiff submitted a grievance pursuant to 103 CMR 491 (Inmate Grievances).  <u>See</u> Grievance, attached as part of Exhibit C; <u>see</u> <u>also</u> 103 CMR 491 policy, a true and accurate copy of which is attached hereto for ease of reference as Exhibit F.

He stated "On 4-2-03, I was physically assaulted by Officers Bruce Tessier, Brian Ford, Lt. Patrick Smith and Captain Thomas Borroni and others [sic] officers whose [sic] I do not know. This assault began at 10 block and continued until I was in B-3. I suffered serious injuries as a result." See relevant portions of Exhibit C.

12. On April 8, 2003, the plaintiff was seen by a doctor, who diagnosed him with lower back pain and headaches and suggested that the plaintiff try Inderal prophylactically. See Exhibit E and C.

13. On April 9, 2003, the plaintiff's grievance was denied, and "[a]s a result of the nature of this complaint, it is being referred to Supt. Allen's Office for review." See Grievance attached as part of Exhibit C.

14. On April 11, 2003, Superintendent Allen requested his special investigators to conduct an inquiry into the plaintiff's allegations of assault. See Exhibit C, at p.1.

15. On May 8, 2003, the special investigator concluded his inquiry and forwarded his completed investigation to Superintendent Peter Allen. See Exhibit C, at p.1.

16. On May 13, 2003, the plaintiff received a letter from Superintendent Peter Allen advising him that there was no substance to his allegations of staff assault and formally denying his grievance. See Correspondence dated May 13, 2003, attached as part of Exhibit C.

17. On July 8, 2003, the plaintiff underwent an EEG study at Lemuel Shattuck Hospital, which resulted in normal findings. See Consult Report, a true and accurate copy of which is attached hereto as Exhibit G.

18. Between April 8, 2003 and April 9, 2004, the plaintiff made no complaints about, and received no documented treatment for, headaches or any of the other injuries alleged in his complaint. See generally Exhibits D and E.

19.     On April 9, 2004, the plaintiff complained of a headache after he returned from a hospitalization for hunger striking. See Exhibit D at note dated April 9, 2004. He refused treatment. Id.

20.     Between April 9, 2004 and August 2005, the plaintiff made no further complaints about, and received no documented treatment for either headaches or any of the other injuries alleged in his complaint. See generally Exhibits D and E.

Dated: August 15, 2005                                        Respectfully submitted,

                                                          Defendants,

By their attorneys:
NANCY ANKERS WHITE
Special Assistant Attorney General


   /s/ Wendy C. Weber
Wendy C. Weber, Counsel
BBO No. 633950
Department of Correction
Legal Division
70 Franklin Street, Suite 600
Boston, MA 02110-1300
(617) 727-3300 x189

**The Court has excused compliance with Local Rules 7.1(A)(2) and 37.1 by the defendant in this case.**

CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the plaintiff appearing *pro se* by first class mail.

Date: August 15, 2005                            /s/ Wendy C. Weber                            .
                                                          Wendy C. Weber, Counsel