UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 05-10898-DPW

JOHN BALDWIN,

    Plaintiff,

v.

BRUCE TESSIER, *et al.*,

    Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Now come the defendants in the above-captioned matter and hereby submit the following Memorandum of Law in support of their motion to dismiss, or in the alternative, for summary judgment on each of the plaintiff's claims herein.

## PROCEDURAL BACKGROUND

The *pro se* plaintiff, John Baldwin, is currently an inmate lawfully committed to the Massachusetts Treatment Center, awaiting a commitment hearing to determine sexual dangerousness pursuant to G.L.c. 123A, §§1-12-16. See Def.'s Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Statement"), filed herewith, at ¶1 and Exhibit A thereto. The served defendants are Bruce Tessier, Patrick Smith and Thomas Barroni, all of whom were correction officers employed by the Department of Correction and assigned to the Massachusetts Correctional Center – Cedar Junction ("MCI-CJ") at all times relevant to the plaintiff's claims[1]. Complaint, ¶¶4-6. The plaintiff initiated this lawsuit by filing his complaint on April 27, 2005, apparently alleging (1) excessive force in violation of the Eighth Amendment; (2) denial of due

---

[1] The summons intended for defendant Brian Ford was returned unexecuted. See Docket Entry No. 12. To date, the plaintiff has not completed service on Mr. Ford. Notwithstanding the foregoing and without waiving defendant Ford's right to personal service, the defendants herein state that all claims should be dismissed against Mr. Ford on the merits as discussed below.

process in violation of the Fourteenth Amendment; (3) denial of proper medical care in violation of the Eighth Amendment; and (4) the state tort of assault and battery. See Docket Entry No. 2 and Complaint, pp.3-5. The defendants now file the instant responsive pleading moving to dismiss, or in the alternative, for summary judgment, on each of the plaintiff's claims.

## FACTUAL BACKGROUND

The defendants refer the Court to their Statement of Undisputed Facts Pursuant to Local Rule 56.1, filed herewith and incorporated by reference herein.

## ARGUMENT

### I. THE PLAINTIFF'S EIGHTH AMENDMENT CLAIM OF EXCESSIVE FORCE MUST FAIL WHERE HE SUFFERED ONLY *DE MINIMIS* INJURIES.

The plaintiff appears to allege as his first cause of action "misuse of force." See Complaint, p.3. In a use of force claim, the central question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillan, 503 U.S. 1, 6 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action….Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Id. at 9 (internal citations and quotations omitted). "The Eighth Amendment's prohibition…necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations omitted).

In order to survive a motion to dismiss, the plaintiff "must allege wrong doing that reasonably and plausibly amounts to more than a de minimis use of force." Calbaria v. DuBois, 1994 U.S. App. LEXIS 12424, *6 (1st Cir. 1994). Alternatively, in the summary judgment

context, in order for his claim to survive, the plaintiff "must have evidence that 'will support a reliable inference of wantonness in the infliction of pain.'" Fillmore v. Page, 358 F.3d 496, 504 (7th Cir. 2004) (quoting Whitley, 475 U.S. at 322).  Moreover, although it is appropriate to draw reasonable inferences in the plaintiff's favor, the court "should not draw inferences that while theoretically possible are inconsistent with the pleadings." Holman v. Indiana, 211 F.3d 399, 407 (7th Cir. 2000).  In the instant case, the plaintiff meets neither standard.

The plaintiff alleges that defendant Ford "struck him in the hip area, causing bruising." Complaint, ¶13.  He alleges that defendant Tessier used a shirt to strangle him, and that defendants Smith, Ford and Tessier "caus[ed] swollen eyes, bruising to his face, [and] right hip" and that his restraints were too tight, causing a cut.  Complaint, ¶¶14-15.  He makes no allegations of excessive force against defendant Barroni.  Complaint, ¶16.  None of these injuries (swelling, bruising on face and hip, and a cut), however, is more than de minimis, even when taken together.  See e.g. Hill v. Vanatta, 123 Fed.Appx. 723, 724 (7th Cir. 2005) (noting that lower court held slap causing redness and swelling was insufficient to state a claim for excessive force under the Eighth Amendment); Tarver v. City of Edna, 410 F.3d 745, 752 (5th Cir. 2005) (contusions caused by handcuffing were de minimis and did not constitute excessive force); Crumley v. city of St. Paul, 324 F.3d 1003, 1008 (8th Cir. 2003) (reaffirming prior holding requiring medical records establishing permanent injury before allowing application of handcuffs to give rise to an excessive force claim); Corsetti v. Tessmer, 41 Fed. Appx. 753, 755 (6th Cir. 2002) (two small bruises and minor cuts were de minimis injuries); Luong v. Hatt, 979 F.Supp. 481, 485-486 (N.D. Tex. 1997) (minor abrasions on the forearm and chest, a contusion with slight swelling of the jaw, a swollen wrist, cuts on face and tongue and a bloody nose were only de minimis injuries because they were the type of injuries that would not require a 'free world

person to visit an emergency room or have a doctor attend to give an opinion, diagnosis and/or medical treatment for the injury.'). Accordingly, where the plaintiff has failed to reasonably and plausibly allege more than a de minimis use of force, his claim should be dismissed.

Notwithstanding the foregoing, upon viewing the plaintiff's medical records, and the investigation conducted into his claim that he was assaulted, it is clear that the record cannot support a reliable inference of wantonness in the infliction of pain, as the documented injuries not only differ radically from those claimed by the plaintiff, but are even more insignificant than those alleged. According to an incident report authored by Registered Nurse Adalgisa Ortiz, she medically assessed the plaintiff in the HSU on April 2, 2003, shortly after the incident alleged in his complaint. See Statement, ¶8 and Exhibit C. Her report states as follows:

> [Inmate] seen in cell. facial redness noted. no bruises or lacerations noted. Superficial scratch mark on the neck, [left] side of neck no bleeding. Facial redness noted on [inmate] when he was in AA unit.

Id. In addition, the plaintiff was seen the following day by Kara K. Erdody, Nurse Practitioner. Id. at ¶9 and Exhibits C and D. According to her report, the plaintiff was seen for three reasons: he had submitted a sick slip requesting Mylanta, he wanted a renewal of his order for a cane and knee sleeve and he complained to her of "getting messed up" during transport from the AA Unit to B3. Id. Ms. Erdody noted that he was "moving all extremities in excited gestures" during her exam. She noted "Facial area around cheeks, forehead, nose [with] redness, no abrasions, no ecchymosis, no hematomas." She also noted "[left] neck [with] superficial area mild bruising/scratch marks, no bleeding." Id. Finally, her examination of his chest, back and lower extremities determined them to be clear of injury. Id. Her assessment concluded: "no significant injuries noted." Id. Notably, she made no note that the plaintiff complained about headaches or an injury to his hip during this visit. Id.

4

On April 7, 2003, the plaintiff for the first time complained of headaches[2]. Statement, ¶10 and Exhibits C and E. He was prescribed Inderal "prophylactically." Id. Notably, the plaintiff's medical records from that point through April 9, 2004 make no mention of complaints about headaches or any other of his alleged injuries. Id. at ¶18 and Exhibits D and E. On April 9, 2004, he complained of a headache after returning from a stay at Lemuel Shattuck Hospital due to a hunger strike. Id. at ¶19 and Exhibit D. He refused treatment at that time. Id. His medical records through August 2005 show no mention of headaches or headache treatment. Id. at ¶20 and Exhibits D and E.

Based upon the medical records, the plaintiff cannot support a reliable inference of more than a de minimis injury – a superficial scratch on his neck that did not even break the skin. Accordingly, his claim simply does not rise to the level of a constitutional violation and the defendants are entitled to judgment as a matter of law.

## II.   THE PLAINTIFF'S HAS FAILED TO STATE A DUE PROCESS CLAIM.

The plaintiff next alleges that he was denied due process. See Complaint, ¶¶17-19. He appears to allege two (2) bases for his claim: (1) that there was no use of force report filed; and (2) that his grievance and appeal were denied. Both bases are addressed below.

### A.   Failure to File a Use of Force Report is not a Constitutional Violation.

Section 1983 requires violation of a federal constitutional or statutory right. Accordingly, the mere failure to properly follow state law or regulations cannot provide the basis for a §1983 claim. See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 106 (1984); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 230 (1st Cir. 1992); Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992) (violations of state law - even where arbitrary, capricious, or

---

[2] He also complained of left shoulder pain and numbness in his spine and left shoulder. These alleged injuries are not described in his complaint. Notably, the right hip and cut ankle described in his complaint were not mentioned to either the RN or the NP on April 2 and 3, and are not mentioned in the April 7, 2003 sick call request form.

5

undertaken in bad faith - do not, without more, give rise to a denial of substantive due process under the U.S. Constitution); Sorenson v. Murphy, 874 F.Supp. 461, 463 (D.Mass. 1995) (not every failure of a state agency to adhere to its self-imposed regulations results in a violation of the Due Process Clause). Even assuming the facts in the light most favorable to the plaintiff – that the defendants actually used force and were required by regulation to file a report – their failure to do so simply does not violate due process. Accordingly, this portion of the plaintiff's claim must be dismissed.

### B.     **Denial of the Plaintiff's Grievance and Grievance Appeal Did Not Violate Due Process**.

In evaluating plaintiff's due process claim arising from his grievance, the Court must first consider whether there is an identifiable liberty or property interest with which the state has interfered. Board of Regents v. Roth, 408 U.S. 564 (1972). In the instant case, the plaintiff has failed to state a cognizable due process claim in that he has not stated a protected liberty interest. See Sandin v. Conner, 515 U.S. 472 (1995).

The framework for determining whether a prisoner challenging prison practices has stated a liberty interest is set forth by the United States Supreme Court in Sandin v. Conner. Id. To establish a right to procedural due process, prisoners must assert either (1) that the deprivation was of the sort giving rise to due process protection of its own accord, or (2) that mandatory language in prisoner regulations has created a liberty interest with respect to a deprivation that is "atypical and significant." Sandin v. Conner, 515 U.S. at 484. In the prison context, very few deprivations give rise to direct protection by the Due Process Clause of its own force. In Sandin, the Supreme Court references only two instances: the involuntary transfer of a prisoner to a psychiatric hospital, and the involuntary administration to a prisoner of antipsychotic medication. Sandin v. Conner, 515 U.S. at

484, citing Vitek v. Jones, 445 U.S. 480, 493, (1980)(involuntary hospitalization), and Washington v. Harper, 494 U.S. 210, 221-222 (1990)(involuntary medication). Id.

In this case, the plaintiff clearly was not deprived of property, nor does he allege that he was. He has further failed to allege that he was deprived of a liberty interest giving rise to due process protection of its own accord. Accordingly, the Court must evaluate whether mandatory language in the grievance policy created a liberty interest with respect to any deprivation. By its very nature, however, the grievance policy does not deprive an inmate of any interest, property or liberty. Statement, at Exhibit F. Instead, it merely provides an opportunity for an inmate to seek redress. Id. In this case, as plaintiff admits, he was permitted to grieve and appeal the alleged incident on April 2, 2003. Complaint, ¶¶18-19. Although he may not have been satisfied with the outcome of the process, he was permitted to engage in it. Accordingly, he was deprived of nothing. As a result, his due process claim with regard to the grievance procedure must be dismissed.

### III. THE PLAINTIFF WAS NOT DENIED MEDICAL CARE AS A MATTER OF LAW.

The plaintiff next alleges that the defendants denied him medical care. See Complaint, ¶¶21-24. The defendants read this as an allegation that the defendants were deliberately indifferent to a serious medical need in violation of the Eighth Amendment.

With regard to health care, the Supreme Court has held that "prison officials must ensure that inmates receive adequate medical care." Farmer v. Brennan, 511 U.S. 825, 831 (1994). The Supreme Court has also held, however, that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. Mere accidents or negligence are insufficient to state an Eighth Amendment claim. Id. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently

7

harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.  <u>Id</u>. at 106; <u>see also</u> <u>Farmer</u>, 511 U.S. at 831 (reaffirming and amplifying the deliberate indifference standard).

"Deliberate indifference has both a subjective and objective component." <u>Kosilek v. Maloney</u>, 221 F.Supp. 2d 156,180 (2002) (citing <u>Farmer</u>, 511 U.S. at 846, n.9; <u>Wilson v. Seiter</u>, 501 U.S. 294, 298-99 (1991); <u>DesRosiers v. Moran</u>, 949 F.2d 15, 18 (1st Cir. 1991)).  The objective portion of the deliberate indifference standard is satisfied only when an inmate shows that he has a serious medical need that has not been adequately treated. <u>Kosilek</u>, 221 F.Supp.2d at 180.  In this case, the plaintiff had no serious medical need.  Medical records indicate that on April 2, 2003, he presented only with pre-existing facial redness and a superficial scratch on his neck.  Statement, ¶8 and Exhibit C. Follow-up records on April 3, 2003 indicate the same.  <u>Id</u>. at ¶9 and Exhibits C and D.  Even if the Court reads the plaintiff's complaint leniently to include headaches as a serious medical need, the records indicate the plaintiff was treated with medication upon submitting a sick slip (and plaintiff so admits).  <u>Id</u>. at ¶12 and Exhibit 12.  He was also followed up with an EEG, which returned normal results.  <u>Id</u>. at ¶17 and Exhibit G.

Moreover, "an inmate who argues that a delay in medical treatment amounted to an Eighth Amendment violation 'must place verifying medical evidence in the record to establish the detrimental effect of the delay." <u>Jarriet v. Wilson</u>, 2005 U.S.App. LEXIS 13661, at *21 (6th Cir. 2005) (quoting <u>Napier v. Madison County</u>, 238 F.3d 739, 742 (6th Cir. 2001) and <u>Hill v. DeKalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1188 (11th Cir. 1994)).  As is evident from the medical records submitted by the defendants, this the plaintiff cannot do.  <u>See</u> <u>generally</u>

8

Statement, ¶¶8-12 and Exhibits D and E. Accordingly, the plaintiff fails to meet the objective standard necessary to prevail on an Eighth Amendment claim.

Notwithstanding the foregoing, the plaintiff cannot meet the subjective portion of the standard either. The subjective component requires that "the official responsible for making the relevant decisions regarding an inmate's medical care both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer, 511 U.S. at 837. "Wantonness," not inadvertence or error, characterizes the conduct actionable under the Eighth Amendment. Wilson, 501 U.S. at 302. "In order to establish deliberate indifference, the complainant must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain." DesRosiers, 949 F.2d at 19.

Where a prisoner claims that a prison official has violated the Eighth Amendment, "the state of mind may be manifested by the officials' response to an inmate's known needs or by denial, delay, or interference with [an inmate's] prescribed health care." Id. at 18-19. In considering the state of mind element, courts have adopted the criminal recklessness standard, holding that the complainant must prove that the official was subjectively aware of a "substantial risk of serious harm" to an inmate's health or safety and consciously disregarded it. See Farmer, 511 U.S. at 837; Baptiste v. Sheriff of Bristol County, 35 Mass. App. Ct. 119, 122 (1993). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot...be condemned as the infliction of punishment" in violation of the Eighth Amendment. Farmer v. Brennan, 511 U.S. at 838.

In this case, as the only documented visible injury suffered by the plaintiff was a superficial scratch on the neck, the defendants could not have been aware of any substantial risk of serious harm to the inmate's health – indeed, could be no risk of harm where the plaintiff did

9

not even need treatment for his "injury."  See Zentmeyer v. Kendall County, Ill., 220 F.3d 805, 810 (7th Cir. 2000) (failure to call doctors whenever a prisoner suffers minor scrapes and bruises is not deliberate indifference); Gutierrez v. Peters, 111 F.3d 1364, 1372 (7th Cir. 1997) (standing for the same proposition); Boyce v. Moore, 314 F.3d 884, 890 (7th Cir. 2002) (where prison officials were only aware of minor symptoms like swelling, they were not deliberately indifferent).

In addition, the medical records clearly conflict with the plaintiff's allegation that he was denied medical attention "for approx. 4 to 7 days."  Complaint, ¶22.  Not only was he seen immediately after his transfer, but he was seen in follow-up the following day and upon submitting a sick slip a few days later.  Statement, ¶¶8-12 and Exhibits C, D and E.  In each instance, no physical injuries were noted by any medical staff other than a superficial scratch on the neck.  Id.  Given that the plaintiff was seen at least three times by medical staff within a week of the incident, the defendants cannot be said to have consciously disregarded a serious risk to the plaintiff's health or safety, and this claim must be dismissed.

**IV.   THE PLAINTIFF CANNOT PREVAIL ON A CLAIM FOR ASSAULT AND BATTERY.**

    **A.   Should The Court Dismiss Each Count For The Reasons Set Forth Above, The Only Remaining Claim is a State Law Claim, Over Which The Court May Decline To Retain Jurisdiction.**

As a preliminary matter, the Court may, in its discretion, "decline to exercise supplemental jurisdiction" over state law claims pursuant to 28 U.S.C. §1367(c)(3), if only state law claims remain after all federal claims have been disposed of.  Courts generally decline to exercise supplemental jurisdiction over state claims if the federal predicate is disposed of early in the litigation.  See Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).  Accordingly, if the defendants are entitled to dismissal of each of the plaintiff's

federal claims, as argued above, the Court may decline to exercise supplemental jurisdiction over the remaining state tort claim.

**B.      To the Extent the Defendants' Used Force, It Was Lawful, Justified and Not Excessive.**

"Under Massachusetts law, an assault and battery is an intentional tort subjecting an actor to liability if:

> (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results."

In re: Limieux, 306 B.R. 433, 440 (Bkrtcy.D.Mass. 2004) (quoting Waters v. Blackshear, 412 Mass. 589, 590 (1992) (other citations omitted)). In addition, "'[a] result is intended if the act is done for the purpose of accomplishing the result or with knowledge that to a substantial certainty such a result will ensue.'" Blackshear, 412 Mass. at 590-91 (citing W.L. Prosser & W.P. Keeton, Torts, § 9, at 41 (5th ed. 1984)). Moreover, "it is a bedrock principle of Massachusetts case law that civil liability for an assault and battery will not lie if there is a showing of justification or cognizable excuse for the defendant's actions." Limieux, 306 B.R. at 440; see Com. V. McKie, 67 Mass. 61, 62-62 (1854) (holding that while criminal battery requires the government to prove beyond a reasonable doubt that there was no justification for the defendant's actions if the defendant raises such a defense, a defendant under a civil complaint for battery must affirmatively prove his averment of justification or excuse); Blake v. Damon, 103 Mass. 199 (1869) (holding that "an assault and battery is an unlawful and unjustifiable use of force and violence, however slight, upon the person of another."); Cooper v. McKenna, 124 Mass. 284, 285 (1878) (holding that absent a defense of legitimate justification, liability for assault and batter will lie); Jackson v. Old Colony St. Ry. Co., 206 Mass. 477, 488 (1910) (setting aside a verdict for the defendant in an assault and battery

11

action on the basis that the "substantial error of the trial arose from the assumption that under the circumstances verbal provocation was the legal equivalent of justification"). As discussed above at Section I, above, however, the plaintiff simply cannot prevail on his claim that any excessive force was used.

Moreover, as set forth in the investigation conducted as a result of the plaintiff's grievance, to the extent that there was any use of force, it was lawful and justified. When the plaintiff refused to walk without his cane during the escort to his new housing unit, it was necessary for the officers to assist him by supporting his upper body, which at times caused his feet to drag on the floor. Statement, ¶5 and Exhibit C. The regulation governing use of force by the Department specifically provides that "[a]n employee may use reasonable force when it is necessary to…move an inmate who has refused a proper order by an employee." 103 CMR 505.07(1)(f). Accordingly, even assuming *arguendo* that force was used on the plaintiff, it was lawful and justified by Department regulations, and there is no reasonable inference that the escort involved excessive force. Accordingly, this claim should be dismissed.

**V.    THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

It is well established that "governmental officials performing discretionary duties generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In explication, the Supreme Court has stated:

> "[T]he right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. . [b]ut if the test of 'clearly established law' were to be applied at

12

>   this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of Harlow.  Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. . .  It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that at reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 639-40 (1987) (citations omitted).

The scope of qualified immunity "sweeps so broadly that 'all but the plainly incompetent or those who knowingly violate the law' are protected from civil rights suits for money damages." Hegarty v. Somerset County, 53 F.3d 1367, 1373 (1st Cir. 1995) (citation omitted).  Qualified immunity protects law enforcement officers from "bad guesses in gray areas" and ensures that they are liable only "for transgressing the bright lines." Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998) (citation omitted).  Because the law was clearly established in defendants' favor on each of the above claims, a fortiori, the law was not clearly established in plaintiffs' favor.  Therefore, defendants are shielded by qualified immunity.

**CONCLUSION**

WHEREFOR, the defendants respectfully request that this Court enter judgment as to defendants on each of the plaintiff's claims.

Dated: August 15, 2005

Respectfully submitted,

Defendants,
By their attorneys:
NANCY ANKERS WHITE
Special Assistant Attorney General
  /s/ Wendy C. Weber
Wendy C. Weber, Counsel
BBO No. 633950
Department of Correction
Legal Division
70 Franklin Street, Suite 600
Boston, MA 02110-1300
(617) 727-3300 x189

**The Court has excused compliance with Local Rules 7.1(A)(2) and 37.1 by the defendant in this case.**

CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the plaintiff appearing *pro se* by first class mail.

Date:  August 15, 2005        /s/ Wendy C. Weber        .
                              Wendy C. Weber, Counsel