UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
JOHN BALDWIN,                    )
        Plaintiff,              )
                               )        CIVIL ACTION NO.
        v.                     )        05-10898-DPW
                               )
BRUCE TESSIER, BRIAN FORD,     )
PATRICK SMITH, AND             )
THOMAS BARRONI,                )
        Defendants.            )
```

MEMORANDUM AND ORDER
March 22, 2006

The Plaintiff, John Baldwin, was an inmate at the

Massachusetts Correctional Institution – Cedar Junction in April

2003.  He has filed this § 1983 suit against four Cedar Junction

guards -- Bruce Tessier, Brian Ford,[1] Patrick Smith, and Thomas

Barroni ("the Guards" or "the Defendants") -- alleging excessive

use of force and denial of medical care in violation of his

Eighth Amendment rights.[2]  He has also brought claims against the

_____

[1] It appears that the summons intended for defendant Brian
Ford was returned unexecuted.  The Defendants made Baldwin aware
of this deficiency in their Motion to Enlarge Time filed on July
15, 2005, their Motion to Dismiss, or, in the Alternative, for
Summary Judgment filed on August 15, 2005, and in their
Opposition to Plaintiff's Request for Default filed on August 31,
2005.  Yet, to date, Baldwin has not completed service on Ford.
Consequently, I will dismiss the Complaint against Ford in its
entirety pursuant to Fed. R. Civ. P. 4(m).

[2] The Defendants address what they perceive as a denial of
due process claim in his Complaint.  See Defendants' Memorandum,
pp. 5-7. While Baldwin used the heading of "Denial of Due
Process" to separate paragraphs 17 through 20 of the Complaint,
it does not appear that Baldwin intended to state a Fourteenth
Amendment claim with these words alone.  Baldwin clearly only

Guards for assault and battery under state law.

## I. INTRODUCTION

### a. The Record

The Defendants have filed a Motion to Dismiss, or, in the Alternative, for Summary Judgment.  In accordance with Local Rule 56.1, the Defendants have also filed a Statement of Undisputed Facts.  Attached to the Statement of Undisputed Facts are seven unauthenticated and uncertified exhibits.  Technically speaking, to satisfy Rule 56, the Defendants should have introduced these exhibits into the record through affidavits.  <u>Cerqueira v. Cerqueira</u>, 828 F.2d 863, 865 (1st Cir. 1987); <u>Goldman v. Summerfield</u>, 214 F.2d 858, 859 (D.D.C. 1954).  Although I am tempted to exclude all of the exhibits *sua sponte* and hold the Defendants to the procedural rules, just as I must for *pro se* plaintiffs, Baldwin has not filed a motion to strike or otherwise objected to the exhibits.  Except for questioning whether he was actually examined by medical staff on April 2nd and 3rd and whether he submitted the sick slip on April 3rd as suggested by the attached medical records, Baldwin appears to concede the

---

references the two alleged violations of his Eighth Amendment rights and state law in the "Preliminary Statement" and in paragraphs 25, 26, and 27 of the "Claims for Relief" section.  He also only requests clearly a declaratory judgment and damages related to the alleged violations of his Eighth Amendment rights and state law.  Finally, in his Opposition, Baldwin does not mention any purported denial of due process claim.  Under the circumstances, I do not separately address a due process claim.

authenticity of the medical records and the Special
Investigator's Memorandum.  See Plaintiff's Statement of Disputed
Facts, pp. 1-2; Cerqueira, 828 F.2d at 865 ("We see no point in
remanding this case to permit [the Defendant] to file an
affidavit stating the very thing that [the Plaintiff] has
conceded, namely, that the document is what it purports to be.");
10A Wright, Miller & Kane, Federal Practice and Procedure: Civil
3d, § 2722 (2005)("As is true of other material introduced on a
summary-judgment motion, uncertified or otherwise inadmissible
documents may be considered by the court if not challenged.  The
objection must be timely or it will be deemed to have been
waived.")  Consequently, I will consider the medical records and
other relevant exhibits given their easily-remedied flaw, but I
will not consider the inadmissible hearsay in the Special
Investigator's Memorandum.  Horta v. Sullivan, 4 F.3d 2, 8 (1st
Cir. 1993)("[I]nadmissible evidence may not be considered.")

    Given the state of the record in front of me, I set out the
facts as alleged in the Complaint, supplementing these
allegations in footnotes with the facts provided in support of
and in opposition to the Defendants' Motion for Summary Judgment.

### b.  The Facts

    Baldwin alleges that on or about April 1, 2003, he was
housed in the segregation unit at Cedar Junction.  Defendant
Tessier came to his cell and told him to pack his stuff because

he would be moving to a different cell.  Baldwin refused to relocate because the other cell still had feces smeared on the wall, posing a serious health risk.  Consequently, Baldwin remained in the original unit.  [Complaint, ¶ 8.]  The next morning, April 2, a nurse approached Baldwin's cell and told him to get his water in order to receive his medications.  Baldwin explained to her that he had an order for his medications not to be crushed.  [Complaint, ¶ 9.]  After this exchange, Defendant Barroni ordered Defendant Ford to put handcuffs and leg irons on Baldwin.  Defendant Barroni also ordered that Baldwin be given his cane so that he could be brought to the end of the tier to receive his medication.  After Baldwin took his medication, Defendant Barroni ordered Defendants Ford and Tessier to drag Baldwin up the stairs in order to move him to a cell in the general population.  Defendant Barroni also ordered Defendants Ford and Tessier to take the cane from Baldwin.  [Complaint, ¶ 10.] Upon reaching the top of the stairs, Defendant Barroni called to Defendant Smith to open the gate and join in the escort of Baldwin to his cell.  [Complaint, ¶ 11.]

     During the escort, Baldwin alleges that Defendants Tessier, Ford and Smith used excessive force and physically assaulted him. [Complaint, ¶ 12.]  Specifically, Baldwin claims that Defendant Ford struck him in the hip area causing bruising, that Defendant Tessier used Baldwin's shirt to strangle him causing marks on his neck, and that Defendants Ford, Tessier and Smith further

-4-

assaulted him causing swollen eyes and bruising to his face and right hip. [Complaint, ¶¶ 13-15.] He also claims that he received a cut to his ankle because the leg irons were fastened too tightly, [Complaint, ¶ 15], and that his injuries caused him to have migraine headaches. [Complaint, ¶ 23.] Baldwin claims that Defendant Barroni observed the assaults, but did nothing to intervene. [Complaint, ¶ 16.]

Baldwin claims that, as a result of the injuries received during the escort, he asked the Defendants if he could see someone from the medical staff. [Complaint, ¶ 21.] He alleges that all of the Defendants denied his request and that he was left in his cell for four to seven days without any medical attention. [Complaint, ¶ 22.][3] At some point thereafter, Baldwin

---

[3] Contrary to the Complaint, the medical records attached to the Investigation Memorandum dated May 8, 2003 (Defendants' Statement of Undisputed Facts, Exhibit C) contain materials indicating Baldwin was seen by medical personnel the day of the escort. An Incident Report dated April 2, 2003 and signed by Registered Nurse Adalgisa Ortiz, notes:

> [Inmate Baldwin] seen in cell. facial redness noted. no bruises or lacerations noted. superficial scratch mark on the neck ([left] side of neck, no bleeding). Facial redness noted on [inmate] while he was in AA unit.

I will not consider Nurse Ortiz's hearsay statement to the internal Special Investigator in her interview on April 21, 2003 that she had previously noted facial redness "days before" Baldwin's allegations of a staff assault on April 2, 2003. [Exhibit C, p. 3.]

There is also a Progress Note signed by Nurse Practitioner Kara K. Erdody on April 3, 2003 indicating that Baldwin was seen for several reasons: (1) he had submitted a sick slip requesting

submitted a medical request slip. [Complaint, ¶ 23.][4] After a few

days, he was seen by a physician who diagnosed him with migraine

headaches and prescribed medication to help alleviate the

headaches. [Complaint, ¶ 24.]

Baldwin claims that he filed a grievance on April 2, 2003,

the day of the incident.[5]  The grievance was denied. [Complaint,

¶ 18.] Baldwin appealed this denial to the then Superintendent of

Cedar Junction, Peter Allen.  The appeal was also denied.

[Complaint, ¶ 19.]  Baldwin claims that no "use of force" reports

--------

Mylanta for stomach upset; (2) he wanted renewal of his orders
for a cane and knee sleeve; and (3) for "getting messed up"
during his transport yesterday from AA to B3.  In her exam, she
noted "facial area around cheeks, forehead, nose [with]
redness, no abrasions, no ecchymosis, no hematomas.  [Left] neck
[with] superficial area mild bruising/scratch marks, no
bleeding."

Finally, there is an EEG (electroencephalogram) Report from
a study on July 8, 2003 at the Lemuel Shattuck Hospital.
According to the Report, the impression was "normal", but some of
the impressions were consistent with migraineurs.

[4] Attached to the Investigation Memorandum is a Sick Call
Request Form signed by Baldwin and dated April 7, 2003.  Baldwin
indicated: "I wish to see someone for the bad headaches, pain in
my [left] shoulder and the numbness up & down my spine and in
[left] shoulder."  The slip appears to have been "received" on
April 8, 2003, when Baldwin's request was assigned to a
"Midlevel."

[5]  Attached to the Investigation Memorandum is an Inmate
Grievance Form signed by Baldwin and dated April 7, 2003.
Baldwin indicated that "on 4-2-03, I was physically assaulted by
Officers ~~Bruce~~ Tessier, ~~Brian~~ Ford, Lt. ~~Patrick~~ Smith and ~~Captain~~
~~Thomas~~ Borroni and other[] officers whose [names] I do not know.
This assault began at 10 block and continued until I was in B-3.
I suffered serious injuries as a result."  See Defendants'
Statement of Undisputed Facts, ¶ 11.

were filed as a result of this incident as required by 103 C.M.R. 505.13 (Reporting Requirement for the Use of Force). [Complaint, ¶ 17.]

## II. DISCUSSION

### a. Standards of Review

"Because there is no heightened pleading standard in civil rights cases, a district court considering a Rule 12(b)(6) motion must view the plaintiff's complaint through the prism of Fed. R. Civ. P. 8(a)(2)'s notice pleading requirements.  A complaint satisfies that standard if it contains a short and plain statement of the claim showing that the pleader is entitled to relief, and gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Redondo-Borges v. U.S. Dept. of Housing and Urban Development, 421 F.3d 1, 5 (1st Cir. 2005)(internal citations, quotations, and alterations omitted).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." McLaughlin v. Boston Harbor Cruise Lines, Inc., 419 F.3d 47, 50 (1st Cir. 2005) citing Conley v. Gibson, 355 U.S. 41, 46 (1957).

In reviewing a motion to dismiss, courts must "assume the truth of all well-pleaded facts and indulge all reasonable inferences that fit the plaintiff's stated theory of liability."

Redondo-Borges, 421 F.3d at 5 citing In re Colonial Mortg.

Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003).  In doing so,

however, I do not need to credit "'bald assertions, unsupportable

conclusions, periphrastic circumlocutions, and the like.'"  Id.

citing Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

    Where a party, on a motion to dismiss for failure to state a

claim, presents matters outside the pleadings that are not

excluded by the Court, the motion shall be treated as one for

summary judgment and disposed of as provided in Rule 56 after the

parties have been given a "reasonable opportunity to present all

material made pertinent to such a motion by Rule 56."  Fed. R.

Civ. P. 12(b).  "Summary judgment is appropriate when, drawing

all reasonable inferences in favor of the non-moving party (here,

[Baldwin])," Paparo v. M/V ETERNITY, 433 F.3d 169, 172 (1st Cir.

2006), "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of

law."  Fed. R. Civ. P. 56(c).

    A party seeking summary judgment must make a preliminary

showing that no genuine issue of material fact exists.  Nat'l

Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir.

1995), cert. denied, 515 U.S. 1103 (1995).  Once the movant makes

such a showing, the nonmovant must point to specific facts

demonstrating that there is, indeed, a trialworthy issue.  Id.
In other words, to oppose a motion for summary judgment
successfully, the non-moving party must present evidence with
"substance in the sense that it limns differing versions of the
truth which a factfinder must resolve at an ensuing trial.".
LeBlanc v. Great American Insurance Co., 6 F.3d 836, 841-42 (1st
Cir. 1993) (internal citations omitted).

    "'[T]he mere existence of some alleged factual dispute
between the parties will not defeat an otherwise properly
supported motion for summary judgment; the requirement is that
there be no genuine issue of material fact.'"  Medina-Munoz v.
R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)(emphasis
in original)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 247-248 (1986)(citations omitted)).  A fact is "material" if
it has the "potential to affect the outcome of the suit under the
applicable law", Santiago-Ramos v. Centennial P.R. Wireless
Corp., 217 F.3d 46, 52 (1st Cir. 2000), and a "genuine" issue is
one supported by evidence such that "a 'reasonable jury, drawing
favorable inferences,' could resolve it in favor of the nonmoving
party."  Triangle Trading Co., Inc. v. Robroy Indus., Inc., 200
F.3d 1, 2 (1st Cir. 1999) quoting Smith v. F.W. Morse & Co., 76
F.3d 413, 428 (1st Cir. 1996).  "Even in cases where elusive
concepts such as motive or intent are at issue, summary judgment
may be appropriate if the nonmoving party rests merely upon
conclusory allegations, improbable inferences, and unsupported
speculation."  Medina-Munoz, 896 F.2d at 8.

"It is well-settled, however, that the language of Rule 56(e) does not mean that a moving party is automatically entitled to summary judgment if the opposing party does not [properly] respond." De La Vega v. San Juan Star, Inc., 377 F.3d 111, 115 (1st Cir. 2004) quoting Jaroma v. Massey, 873 F.2d 17, 20 (1st Cir. 1989) and Fed. R. Civ. P. 56(e) ("If the adverse party does not [] respond [with evidence showing that there is a genuine issue for trial], summary judgment, *if appropriate*, shall be entered against the adverse party.")(emphasis in De La Vega). Thus, even if the non-moving party presents little or no evidence in opposition, "[t]he court must first inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law" before granting summary judgment. Id. at 115-16 quoting Jaroma, 873 F.2d at 20.

### b. Excessive Force

As the First Circuit has recently observed,

> The framework for analyzing [excessive force]
> claims was set forth by the Supreme Court in
> Whitley v. Albers, 475 U.S. 312 (1986), and
> Hudson v. McMillian, 503 U.S. 1 (1992).
> Generally speaking, '[a]fter incarceration,
> only the unnecessary and wanton infliction of
> pain ... constitutes cruel and unusual
> punishment forbidden by the Eighth
> Amendment.'  Whitley, 475 U.S. at 319
> (internal quotation marks omitted).  The
> critical question in such a case is whether
> the force was applied 'maliciously and
> sadistically for the very purpose of causing
> harm,' id. at 320-21, rather than 'in a
> good-faith effort to maintain or restore
> discipline.' Hudson, 503 U.S. at 7.

-10-

<u>Skinner v. Cunningham</u>, 430 F.3d 483, 488 (1st Cir. 2005).

Whether the use of force was wanton and unnecessary depends on the context and is "responsive to 'contemporary standards of decency.'" <u>Hudson</u>, 503 U.S. at 8 <u>quoting</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976).  Courts are to consider the following factors when considering whether wanton and unnecessary force was used against a prisoner:

> the extent of the injury suffered by [the] inmate ...,
> the need for [the] application of force, the
> relationship between that need and the amount of force
> used, the threat 'reasonably perceived by the
> responsible officials,' and 'any efforts made to temper
> the severity of a forceful response.'

<u>Hudson</u>, 503 U.S. at 7 <u>quoting</u> <u>Whitley</u>, 475 U.S. at 321.

"When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.  This is true whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.  Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today."  <u>Id.</u> at 9 (internal citations omitted).  However, "[t]hat is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action."  <u>Id.</u> <u>citing</u> <u>Johnson v. Glick</u>, 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.")

-11-

"The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (internal quotation omitted).

The Defendants do not challenge or deny Baldwin's allegations "that defendant Ford struck him in the hip, causing a bruise; that defendant Tessier strangled him with a shirt, causing marks on his neck; and that all three defendants further assaulted him, causing swollen eyes, bruising to his face and right hip, and cutting his ankle with leg irons that were applied too tightly." [Defendants' Facts, ¶ 6 citing Complaint, ¶¶ 13-15.] Rather, the Defendants simply argue that they are entitled to a dismissal because none of the injuries alleged in the Complaint, "swelling, bruising on face and hip, and a cut", are "more than de minimis, even when taken together." [Defendants' Memorandum, p. 3.] In the alternative, the Defendants argue that "[b]ased upon the medical records, the plaintiff cannot support a reliable inference of more than a de minimis injury - a superficial scratch on his neck that did not even break the skin. Accordingly, his claim simply does not rise to the level of a constitutional violation and the defendants are entitled to judgment as a matter of law." [Defendants' Memorandum, p. 5.]

Even assuming that Baldwin's injuries were minor, the

-12-

Defendants have failed to demonstrate that causing minor injuries
can never amount to a constitutional violation as a matter of
law.  Consequently, the Defendants have not met their burden of
showing that they are entitled to dismissal as a matter of law,
nor have they met their burden of "demonstrating undisputed facts
entitling [them] to summary judgment as a matter of law." <u>De La
Vega</u>, 377 F.3d at 115-16 <u>quoting</u> <u>Jaroma</u>, 873 F.2d at 20.

In making the argument that they are entitled to dismissal
or summary judgment as a matter of law given the minor injuries
alleged in the Complaint, the Defendants failed to acknowledge
the unresolved debate among the Circuits as to whether or not an
Eighth Amendment claim may ever lie where the injury sustained by
the plaintiff is only minor or *de minimis*.  Since my review of
the First Circuit's jurisprudence has not found any definitive
discussion of this particular issue,[6] I turn to an extended

---

[6]  In the "parallel setting" of a Fourth Amendment excessive
force case, the First Circuit ordered a new trial because of the
trial judge's instruction that the jury consider whether the
person arrested "suffered a serious injury as a result of the
amount of force used by" the police officer, affirming the
uncontested principle that "liability may be imposed for the use
of excessive force even in the absence of a serious injury."
<u>Bastien v. Goddard</u>, 279 F.3d 10, 15, n. 6, 14, 16 n. 8 (1st Cir.
2002).  The Court held that "[a] trialworthy 'excessive force'
claim is not precluded merely because only minor injuries were
inflicted by the seizure." <u>Id.</u> at 14 <u>citing</u> <u>Alexis v. McDonald's
Restaurants of Massachusetts, Inc.</u>, 67 F.3d 341, 353 n. 11 (1st
Cir. 1995).  Yet, in the same decision, the Court also cited
<u>Glenn v. City of Tyler</u>, 242 F.3d 307, 314 (5th Cir. 2001) for the
proposition that "[t]he injury must be more than a de minimis
injury and must be evaluated in the context in which the force
was deployed." <u>Bastien</u>, 279 F.3d at 15 n. 7.  I do not find that
<u>Bastien</u> resolves the issue conclusively one way or another.

review of decisions of the other Circuits.

Norman v. Taylor, a case not cited by the Defendants,

supports their position that "absent the most extraordinary

circumstances, a plaintiff cannot prevail on an Eighth Amendment

_____

At issue in another recent First Circuit excessive force
case, Skinner, was the intent of the officers and whether a
reasonable jury could find that the injuries "resulted from
cruelty or deliberate infliction of pain." Skinner v.
Cunningham, 430 F.3d 483, 489 (1st Cir. 2005). In affirming
summary judgment for the prison authorities, the First
Circuit appears to have accepted the plaintiff's allegation "that as he
was being carried along outside the cell, he was punched in the
face and his eyes, ears, neck and throat were gouged and raked."
The Court cited "[a] medical report from Concord Hospital
prepared two days later ... that [said] Skinner suffered from a
sore shoulder, wrist abrasions and 'blunt trauma' to his eyes,
but had 'no evidence of injury to his head' and would be treated
with Tylenol." Id. at 488; see also Skinner v. Cunningham, No.
Civ. 00-239-B, 2003 WL 21994759, *4, *7 (D.N.H. 2003). The
defendants in Skinner do not appear to have raised, nor did the
Court consider, whether these injuries were sufficient to serve
as the basis for an Eighth Amendment claim. Rather, the First
Circuit affirmed that "[e]ven assuming that ["his throat was
improperly held and his eyes were poked"]..., there is no
evidence to demonstrate that, during the chaos he created,
defendants maliciously injured him." Skinner, 430 F.3d at 489
(emphasis supplied).

See also Leavitt v. Allen, 46 F.3d 1114 (Table), 1995 WL
44530, *3 (1st Cir. 1995)("Leavitt's allegations of excessive
force against defendant Woodbury are limited to the charge that
Woodbury shoved, pushed, and grabbed him. Against defendant
Gallant, Leavitt's allegations are limited to verbal abuse.
These allegations [of wrongful conduct] are therefore de minimis
and cannot provide a basis for a § 1983 claim. 'Not every push or
shove, even if it may later seem unnecessary in the peace of a
judge's chambers, violates a prisoner's constitutional rights.'
Hudson v. McMillian, 503 U.S. 1, 15 (1992)[.]") (emphasis
supplied); Calabria v. Dubois, 23 F.3d 394 (Table), 1994 WL
209938, *2 (1st Cir. 1994)("The conduct presented here -- a
single blow caused by a thrown object and resulting only in a
bloody lip -- was clearly de minimis for Eighth Amendment
purposes, and Calabria's complaint was properly dismissed as
legally deficient.") (emphasis supplied).

-14-

excessive force claim if his injury is *de minimis*." Norman v.
Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994). The Fourth Circuit
reaffirmed this view in Taylor v. McDuffie, 155 F.3d 479 (4th
Cir. 1998). The Court reasoned that "Hudson does not foreclose
and indeed is consistent with such a view," Norman, 25 F.3d at
1263, relying on the following paragraph from the Supreme Court's
decision.

> In this case, the Fifth Circuit found Hudson's claim
> untenable because his injuries were "minor." Yet the
> blows directed at Hudson, which caused bruises,
> swelling, loosened teeth, and a cracked dental plate,
> are not *de minimis* for Eighth Amendment purposes. The
> extent of Hudson's injuries thus provides no basis for
> dismissal of his § 1983 claim.

Hudson, 503 F.3d at 10 (internal citation omitted). The Fourth
Circuit recognized "that there is some tension between our
understanding of the Court's implication and the first sentence
of this passage which, although listing the injuries sustained by
Hudson, states that "the blows" (i.e., the force) leveled against
Hudson were not *de minimis*." Norman, 25 F.3d at 1263 n. 2. The
Court was "satisfied, though, that the better reading of the
passage is that the Court did intend to affirm that injuries can
be so insignificant as to justify a conclusion that excessive
force was not employed. Nothing but inadvertent misstatement,
which we are unwilling to ascribe to the Court in this particular
passage, could explain the explicitness of the second sentence
that the injuries sustained by Hudson could not serve as a ground

for dismissal, and the linkage of 'force' and 'injury' for no other apparent reason in the immediately preceding sentence." Id. Thus, "temporary swelling and irritation is precisely the type of injury this Court considers *de minimis*," Taylor, 155 F.3d at 484, and a prisoner receiving only *de minimis* injuries cannot succeed on an Eighth Amendment claim, absent extraordinary circumstances.

The Defendants did cite Crumley v. City of St. Paul, where the Eighth Circuit held that while "it remains an open question in this circuit whether an excessive force claim requires some minimum level of injury, a de minimis use of force or injury is insufficient to support a finding of a constitutional violation." Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003).[7] But see Cummings v. Malone, 995 F.2d 817, 823 (8th Cir. 1993)("We read our requirement of actual injury as consistent with the Supreme Court's conclusion that more than *de minimis* force is necessary to state an Eighth Amendment violation[.]").

The Defendants also cite Tarver v. City of Edna, where the Fifth Circuit held that "[a]lthough we no longer require 'significant injury' for excessive force claims, the injury must be more than *de minimis*." Tarver v. City of Edna, 410 F.3d 745,

_____

[7] With respect to handcuffing in particular, the Eighth Circuit does require "some evidence of more permanent injury" to support a claim of excessive force. Crumley v. City of St. Paul, 324 F.3d 1003, 1007, 1008 (8th Cir. 2003) citing Foster v. Metro. Airports Com'n, 914 F.2d 1076, 1082 (8th Cir. 1990).

752 (5th Cir. 2005) citing Williams v. Bramer, 180 F.3d 699, 703
(5th Cir. 1999). See also Gomez v. Chandler, 163 F.3d 921, 924
(5th Cir. 1999)("Clearly, then, the law of this Circuit is that
to support an Eighth Amendment excessive force claim a prisoner
must have suffered from the excessive force a more than *de
minimis* physical injury, but there is no categorical requirement
that the physical injury be significant, serious, or more than
minor.") I note, however, that in a footnote in Gomez the Fifth
Circuit stated that "[i]t may also be arguable that Siglar[8]
leaves open the possibility that a physical injury which is only
*de minimis* may nevertheless suffice for purposes of the Eighth
Amendment and section 1997e(e)[9] if the force used is of the kind
"'repugnant to the conscience of mankind.'" Gomez, 163 F.3d at
924 n. 4. This is similar to the "extraordinary circumstances"
exception created by the Fourth Circuit. See Norman, 25 F.3d at
1263; Taylor, 155 F.3d at 483 ("Extraordinary circumstances are
present when 'the force used [is] of a sort repugnant to the

---

[8]   Siglar v. Hightower, 113 F.3d 1991, 193 (5th Cir. 1997).

[9]   Section 1997e(e) of the Prison Litigation Reform Act
provides the "[n]o Federal civil action may be brought by a
prisoner confined in a jail, prison, or other correctional
facility, for mental or emotional injury suffered while in
custody without a prior showing of **physical injury**." 42 U.S.C.
1997e(e) (emphasis supplied). While this section has not been
referenced here, and in any event it is not relevant because
Baldwin is claiming physical injury, this section is frequently
discussed as it relates to the prerequisites for an actionable
Eighth Amendment excessive force claim. See, e.g., Oliver v.
Keller, 289 F.3d 623 (9th Cir. 2002).

conscience of mankind ... or the pain itself [is] such that it can properly be said to constitute more than *de minimis* injury.")[10]

I find that these cases, while supportive of the Defendants' position, fail to appreciate the crucial difference limned in Hudson between *de minimis* "force" and *de minimis* "injury". As the Third Circuit explains, "the Supreme Court is committed to an Eighth Amendment which protects against cruel and unusual force, not merely cruel and unusual *force* that results in sufficient *injury*." Brooks v. Kyler, 204 F.3d 102, 108 (3rd Cir. 2000)(emphasis in original).[11]  See also Smith v. Mensinger, 293

_____

[10]  The Defendants also cite two unpublished decisions: Hill v. Vannatta, 123 Fed.Appx. 723, 2005 WL 332453 (7th Cir. 2005) and Corsetti v. Tessmer, 41 Fed.Appx. 753, 2002 WL 1379033 (6th Cir. June 25, 2002).  In Hill, "[t]he only issue that Hill raise[d] on appeal [was] whether his complaint stated a claim for denial of medical care in violation of the Eighth Amendment," although the District Court had dismissed his excessive force claim, reasoning that "a slap causing just redness and swelling was de minimis and thus insufficient to state a claim for excessive force under the Eighth Amendment[.]" Hill, 123 Fed.Appx. at 724.  In Corsetti, the Sixth Circuit agreed that the plaintiff's claim for damages was not actionable under 42 U.S.C. § 1997e(e).  "Although §1997e(e) does not define 'physical injury,' the developing case law in this area reflects the view that, consistent with Eighth Amendment jurisprudence, the predicate injury need not be significant, but must be more than *de minimis*.  *See Siglar v. Hightower*, 113 F.3d 1991, 193 (5th Cir. 1997)(physical injury required as predicate for emotional-distress claim must simply be more than *de minimis*)[.]" Corsetti, 41 Fed.Appx. at 755.

[11]  The Third Circuit specifically rejected the Fourth Circuit's position.  "Although the Norman reading is plausible, drawing instruction from Supreme Court passages through the use of the negative pregnant is risky and unsatisfactory.  We find

F.3d 641, 648 (3rd Cir. 2002)("[T]he district court erred in focusing so narrowly on the absence of serious injuries in deciding if Smith could establish a claim based upon excessive force ... [because] the Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries.")

Similarly, the Ninth Circuit has emphasized that in Hudson the Supreme "Court held that '*de minimis* uses of physical force' are not constitutional violations, focusing on the amount of *force* used, not the nature or severity of the *injury* inflicted." Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (emphasis in original) quoting Hudson, 503 U.S. at 9-10. See also Watford v. Bruce, 126 F.Supp.2d 425, (E.D.Va. 2001)(The holdings in Norman and Taylor "are seemingly in conflict with the United States Supreme Court holding in Hudson ... [because there the Court] recognized that a *per se* non *de minimis* injury requirement would give prison officials carte blanche ability to 'punish' prisoners physically so long as the injuries were not severe.  'Such a result would have been as unacceptable to the drafters of the

───────────────

the better reading of these sentences to be the more
straightforward one, drawn from the general teaching of Hudson:
i.e., the absence of significant resulting injury is not a per se
reason for dismissing a claim based on alleged wanton and
unnecessary use of force against a prisoner.  Although the extent
of an injury provides a means of assessing the legitimacy and
scope of the force, the focus always remains on the force used
(the blows)." Brooks v. Kyler, 204 F.3d 102, 108 (3rd Cir.
2000).

Eighth Amendment as it is today.'").  This is a view developed by
the dissenting judge in <u>Taylor</u>.  <u>Taylor</u>, 155 F.3d at 485
(Murnaghan J. dissenting)(asserting that the majority's decision
in <u>Norman</u> "was based on a patent misreading of the Supreme
Court's decision in <u>Hudson</u>[.]").[12]

    The Second Circuit has also applied this distinction between
*de minimis* force and *de minimis* injury.  <u>Griffin v. Crippen</u>, 193
F.3d 89, 91-92 (2nd Cir. 1999)("The district court mistakenly

-------

[12] Judge Murnaghan went on to observe that:

The present case is indicative of the unacceptable
results achieved when a finding of *de minimis* injury is
considered dispositive of the excessive force inquiry.
Relying on <u>Norman</u>, the majority holds that a claim of
excessive force cannot survive summary judgment where
the plaintiff's injuries are *de minimis, regardless of
whether excessive force was actually employed by the
officers*.  With full faith in the fiction that *de
minimis* injury means *de minimis* force, the majority's
analysis does not even address the possibility that
excessive force may have been used against Taylor
despite the lack of any outward signs of serious
injury.  Yet, it is certainly not difficult to imagine
circumstances where the excessive use of force might
result in no serious, visible injury to the plaintiff.
For example, imagine an inmate who, although thrown
from a prison balcony, is fortunate to incur only minor
scrapes and bruises.  Or imagine an inmate who,
although beaten intensely in the stomach, back, chest,
or groin, displays no greater outward signs of physical
injury than that which the majority terms "temporary
swelling."  While the extent of the plaintiff's
injuries in such cases is obviously relevant to
damages, the fact that such injuries are less than
severe does not answer the ultimate question of whether
the force used was justified under the circumstances.

<u>Taylor v. McDuffie</u>, 155 F.3d 479, 486 (4th Cir. 1998)
(emphasis in original).

concluded that, ... because his injuries were not severe, his
claim failed as a matter of law and no reasonable jury could find
in his favor. ... [A]ppellant need not prove 'significant injury'
to make out an excessive force claim and, thus, the fact that he
suffered only minor injuries does not warrant dismissal.
Although *de minimis* uses of force generally do not suffice to
state a constitutional claim, determining as a matter of law here
that appellant's injuries were *de minimis* was error.")

When considered from this perspective, even the Fifth
Circuit's rule that "a prisoner must have suffered from the
excessive force a more than de minimis physical injury", Gomez,
163 F.3d at 924, is reconcilable with Hudson's focus on wanton
and unnecessary use of force.  The Fifth Circuit's *de minimis*
requirement is derived from the requirement that a plaintiff
asserting an excessive force claim must have "suffered at least
some form of injury." Jackson v. R.E. Culbertson, 984 F.2d 699,
700 (5th Cir. 1993).  However, if one looks at earlier Fifth
Circuit precedent more closely, it is clear that even a modest
injury may be more than *de minimis* because "the amount of injury
necessary to satisfy our requirement of 'some injury' and
establish a constitutional violation is directly related to the
amount of force that is constitutionally permissible under the
circumstances." Ikerd v. Blair, 101 F.3d 430, 434 (5th Cir.
1996).  Thus, "[i]n determining whether an injury caused by

excessive force is more than *de minimis*," even the Fifth Circuit instructs courts to "look to the context in which that force was deployed."  <u>Williams</u>, 180 F.3d at 703.  "What constitutes an injury in an excessive force claim is therefore subjective - it is defined entirely by the context in which the injury arises." <u>Id.</u> at 704.  Consequently, in <u>Williams</u>, the Court held that suffering from dizziness, loss of breath, and coughing as a result of one choking incident during a legitimate search did not rise to the level of *de minimis* or cognizable injury, yet where the officer was motivated entirely by malice during the second choking incident the same physical injuries did qualify as a cognizable injury.[13]

Taking a step back from the debate, what is clear from <u>Hudson</u> is that "the extent of injury suffered by an inmate is [<u>only</u>] one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation," or whether it evinced a wanton and unnecessary infliction of pain.  <u>Hudson</u>, 503 U.S. at 7.  And, that "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." <u>Id.</u>  Considering these

---

[13] Under Fifth Circuit jurisprudence, "a claim for excessive force in violation of the Constitution requires (1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable."  <u>Williams v. Bramer</u>, 180 F.3d 699, 703 (5th Cir. 1999).

-22-

principles, I find that the position of the Second, Third and Ninth Circuits, and the dissenting position in the Fourth Circuit, to be more consistent with <u>Hudson</u> and thus more convincing.  Consequently, I will not dismiss Baldwin's excessive force claim simply because he only alleges what appears to be relatively minor physical injuries in his Complaint.[14]

    1.  <u>Strangling and Assault</u> - Turning to the request for summary judgment in the alternative, the Defendants do not dispute or deny that Defendant Tessier used his shirt to strangle him causing marks on his neck, that the officers escorting Baldwin further assaulted him causing swollen eyes, migraines and bruising to his face and right hip, and that Baldwin received a cut to his ankle because the leg irons were fastened too tightly either.  Rather, the Defendants simply argue that based upon the medical records, the Plaintiff cannot support a reliable inference of more than a *de minimis* injury.

---

[14] <u>See also</u> <u>Christoforo v. Lupo</u>, Civ. A. 03-12307-RGS, 2005 WL 3037076, *3 (D.Mass. November 14, 2005), where the District Court concluded that it "cannot say as a matter of law that Lupo's attack on Christoforo resulted in a truly *de minumus* injury.  A finder of fact could reasonably conclude that the punch to Christoforo's ear was motivated by resentment at Christoforo's request for a transfer rather than a concern for institutional order.  The blow resulted in a visible bump on Christoforo's head and ear, temporary dizziness, vomiting, and tinnitus.  Whether Christoforo can establish any permanent injury attributable to the attack goes to the issue of damages and not liability.  <u>See</u> <u>Brooks v. Kyler</u>, 204 F.3d 102, 108 (3d Cir.2000)('As we read the [<u>Hudson</u>] opinion, the Supreme Court is committed to an Eighth Amendment which protects against cruel and unusual force, not merely cruel and unusual force that results in sufficient injury.')"

According to the medical records, medical personnel only observed "redness" on Mr. Baldwin's face and a superficial bruising/scratch mark on his left neck the day of the incident and the following day.  Six days later, a doctor who examined Mr. Baldwin gave an assessment of lower back pain and headaches.  To be sure, these are not serious injuries, but as with the motion to dismiss, I reject the argument that the Defendants are entitled to summary judgment simply because no excessive force claim can ever succeed where only minor injuries result.

Upon review of the record, however, I find no affidavits from any of the Guards or any other witnesses describing or explaining the circumstances of the incident.  The inadmissible hearsay statements by Defendant Barroni and Deputy Superintendent Jack Luongo to the Investigator cannot be relied upon to grant summary judgment.  Consequently, I find that the Defendants have not met their initial burden of showing that summary judgment is appropriate with respect to Baldwin's allegations of being strangled and assaulted by Defendants Smith and Tessier, as Captain Barroni[15] watched without intervening.  Since the

---

[15]  On this record I cannot dismiss or grant summary judgment with respect to the claim of excessive force against Defendant Barroni even though he is not alleged to have actively participated in the alleged assault because, unlike under Massachusetts tort law, "[a]n officer may be held liable not only for his personal use of excessive force, but also for his failure to intervene in appropriate circumstances to protect an arrestee from the excessive use of force by his fellow officers."  Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002).  See also Torres-Rivera v. O'Neill-Cancel, 406 F.3d 43 (1st Cir. 2005).  In

Defendants could not make the required preliminary showing, I deny summary judgment as to these allegations without even needing to consider the sufficiency of Baldwin's affidavit filed in opposition.  De La Vega, 377 F.3d at 115.

2.  Leg Irons - Although only raised in the context of the state law claim, the Defendants state that "even assuming arguendo that force was used on the plaintiff, [they are entitled to dismissal because] it was lawful and justified by Department regulations, and there is no reasonable inference that the escort involved excessive force." [Defendants' Memorandum, p. 12.] Considering this argument in the Eighth Amendment context, I find that the Defendants can be considered to have made met their burden of making a preliminary showing that no genuine issue of material fact exists as to the use of leg irons.

The specific regulation that the Defendants point to is 103 CMR 505.07(1)(f), which provides that "[a]n employee may use reasonable force when it is necessary to… move an inmate who has refused a proper order by an employee."  As just discussed, the reasonableness of the force used during the escort is a genuine issue of material that cannot be resolved on a summary judgment motion on the sparse record before me, but with respect to the use of leg irons I will also consider the departmental regulation that provide that "[i]nstruments of restraint used during the

──────────────

any event, Defendant Barroni has not raised this argument.

routine movement of inmates from one point to another within a correctional institution shall not be considered a use of force." 103 C.M.R. 505.10(4).

Here, it is undisputed that Baldwin was being transferred or escorted between units when the alleged assault occurred.  That fact, combined with the lack of any documentation supporting any injury to his ankles, is sufficient to satisfy the Defendants' burden of making a preliminary showing that no genuine issue of material fact exists over the use of leg irons in the escort of Baldwin between units.  Consequently, the burden shifts to Baldwin to point to specific facts demonstrating that there is, indeed, a trialworthy issue as to whether the Defendants actually used the leg irons "'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good-faith effort to maintain or restore discipline.'"  Skinner, 430 F.3d at 488 quoting Whitley, 475 U.S. at 320-21 and Hudson, 503 U.S. at 7.

Baldwin did not oppose the Defendants' motion for summary judgment with evidence in an affidavit or other form supporting an inference that it was unreasonable to escort him in leg irons. (In fact, Baldwin does not even mention the use of leg irons in his Affidavit.)  There is also no evidence that Baldwin told the officers that the leg irons were fastened too tightly or that he had them on for longer than the escort.  This is in direct contrast to the unreasonable use of restraints in Bastien v.

Goddard, 279 F.3d 10, 12 (1st Cir. 2002).[16] Thus, I find that there is no genuine issue as to whether the Guards used wanton and unnecessary force when they restrained Baldwin with leg irons during the escort.

3. Qualified Immunity - Defendants Tessier, Smith and Barroni are not entitled to summary judgment based on qualified immunity with respect to the alleged assault and strangling because the immunity doctrine only affords law enforcement officials a safe haven where "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Hegarty v. Somerset County, 53 F.3d 1367, 1373 (1st Cir. 1995). See also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.") The only unresolved or unclear aspect of Eighth Amendment excessive force law is whether or not a claim of

---

[16] There, the illegally person arrested "immediately complained that the handcuffs placed on him were too tight and causing pain", but "[n]o adjustments were made", Bastien, 279 F.3d at 12. "At the police station, appellant remained handcuffed for approximately four more hours, although he repeatedly requested that the cuffs be removed or loosened." Id. "After posting bail, he went to the hospital and was diagnosed with probable 'post traumatic/occlusive loss of sensation [in] both hands of temporary nature.'". Id. Furthermore, "[o]ther medical records indicated that he may have suffered a rotator cuff injury" and he "testified that he experienced pain in his wrists for a few months." Id. at 12-13.

excessive force can survive summary judgment where the
plaintiff's injuries are *de minimis*, regardless of whether
excessive force was actually employed by the officers.  I decline
to grant summary judgment on the ground that an officer could
reasonably have thought that force could be used against an
inmate for any reason so long as the force caused no more than
minor physical injuries.

### c. Denial of Medical Care

Next, Baldwin claims that the Defendants denied him medical
care in violation of the Eighth Amendment.  "In order to
establish [this kind of] constitutional violation, a plaintiff's
claim must meet both objective and subjective criteria.
Surprenant v. Rivas, 424 F.3d 15, 18 (1st Cir. 2005); Farmer v.
Brennan, 511 U.S. 825, 834 (1994).

First, the plaintiff must establish that, from an objective
standpoint, the conditions of his confinement deny him the
minimal measure of necessities required for civilized living."
Surprenant, 424 F.3d at 18 citing Farmer, 511 U.S. at 834.  In
other words, the deprivation alleged must be "objectively
'sufficiently serious.'" Farmer, 511 U.S. at 834 quoting Wilson,
501 U.S. at 298.  In a denial of medical care case, this means
that officials must have ignored or delayed responding to the
prisoner's "serious medical needs."  Estelle v. Gamble, 429 U.S.
97, 104 (1976); Watson v. Caton, 984 F.2d 537, 540 (1st Cir.

-28-

1993). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." Brock v. Wright, 315 F.3d 158, 162 (2nd Cir. 2003). However, the Second Circuit considers factors including: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" Id. citing and quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992, overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).

"Second, the plaintiff must show that, from a subjective standpoint, the defendant was deliberately indifferent to inmate health or safety." Surprenant, 424 F.3d at 19 citing Farmer, 511 U.S. at 834. The deliberate indifference "requirement is a direct consequence of the Eighth Amendment's bar on cruel and unusual punishment; only a condition that can be conceived as being 'deliberately administered for a penal or disciplinary purpose' can constitute punishment." Id. at 19 n. 5 citing Wilson, 501 U.S. at 300 (quoting Johnson v. Glick, 481 F.2d 1028, 1032 (2d Cir. 1973)). The deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying

access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05 (1976)(footnotes omitted). "Deliberate indifference, in this sense, is a mental state akin to criminal recklessness." Surprenant, 424 F.3d at 19 citing Farmer, 511 U.S. at 836-37. "Willful blindness and deliberate indifference are not mere negligence; these concepts are directed at a form of scienter in which the official culpably ignores or turns away from what is otherwise apparent." Alsina-Ortiz v. LaBoy, 400 F.3d 77, 82 (1st Cir. 2005) citing Farmer, 511 U.S. at 839-40.

I will grant the Defendants' motion for summary judgment[17] on the denial of medical care claim because the medical records satisfy the Defendants' burden of making a preliminary showing. Baldwin's proffer in opposition fails to provide sufficient evidence demonstrating that there is, indeed, a trialworthy issue as to whether or not he can meet both the objective and subjective criteria.  Given even a generous consideration of the injuries, it is clear the Defendants could not have been aware of any substantial risk of serious harm to the inmate's health. Furthermore, the documentary evidence shows that contrary to the allegations in the Complaint, he was seen shortly after the incident.

_____

[17]  Given the Defendants' emphasis on the medical records presented in support of their motion for summary judgment, I do not consider the motion to dismiss, but only the motion for summary judgment, as to this claim.

A reasonable jury could not find that Mr. Baldwin was denied
treatment for any "serious medical injury."  Although both nurses
noted the redness and the superficial mark on his neck, neither
recommended any treatment for those injuries.  Thus, there is no
evidence in the record that a reasonable doctor or patient would
find worthy of treatment any of the bruising or swelling injuries
allegedly suffered by Mr. Baldwin.  McGuckin, 974 F.2d at 1059.
Similarly, there is no evidence that any of the bruising or
swelling significantly affected his daily activities or caused
"chronic and substantial pain."  Compare Watson, 984 F.2d at 540
(denying a motion to dismiss where "the prison nurse refused to
treat him for an injury, which proved serious enough to require
surgery"); Brock, 315 F.3d at 163 (denying summary judgment where
the prisoner alleged that "his scar [was] the source of chronic
pain that interfere[d] with his ability to conduct tasks
associated with daily living").

With respect to the allegation that Mr. Baldwin was denied
treatment for migraines caused by the incident, I find that he
has failed to point to any acts or "omissions sufficiently
dangerous to raise an inference of the Defendants' deliberate
indifference to [his]" health sufficient to withstand summary
judgment.  Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991).
"A state-of-mind issue such as the existence of deliberate
indifference usually presents a jury question.  However, where
there is no evidence of treatment so inadequate as to shock the

conscience, let alone that any deficiency was intentional, or evidence of acts or omissions so dangerous (in respect to health or safety) that a defendant's knowledge of a large risk can be inferred, summary judgment is appropriate." Id. (internal citations and quotations omitted). Even if Mr. Baldwin suffered migraines caused by the incident, and even if he was not given medical attention until four to seven days after requesting attention following the escort incident,[18] I find that there is no evidence that the individual Defendants were aware that he was suffering from headaches. The two nurses' notes from April 2nd and 3rd do not mention headaches and prison officials only appear to have received the sick slip complaining of headaches on April 8, 2003.[19] That same day he was seen by a doctor about the headache complaints and prescribed Inderal, a drug used to treat migraines. Three months later, Mr. Baldwin also underwent an EEG

---

[18] Baldwin alleged in his Complaint that he was left in his cell for four to seven days without any medical attention. He continues to maintain that there is a genuine issue as to whether or not he "was examined by a medical staff in his cell on April 2, 2003 after the assault" or whether or not he "submitted a sick slip on April 3, 2003, and was seen by Nurse Practitioner Kara K. Erody." However, the documentary evidence shows that he was seen by medical personnel after the incident that day and the next day, and that he only submitted the sick slip on April 7, 2003.

[19] In his Complaint, Baldwin did not indicate what day he submitted the sick slip request relating to the injuries allegedly received on April 2, 2003. Attached to the Investigator's Memorandum is a sick slip dated April 7, 2003 signed by Baldwin. While Baldwin maintains that there is a genuine issue of fact about whether he actually submitted the sick slip on April 3, 2003, [Plaintiff's Opposition, p. 6], he does not dispute that he was seen by a Doctor on April 8, 2003.

study at Lemuel Shattuck Hospital.  Thus, even assuming that migraines could be considered a "serious medical need," there is nothing on the record that raises the inference that any of the individual Defendants were deliberately indifferent to his headaches.  Accordingly, I grant summary judgment to the Defendants on the denial of medical care claim.

### c. State Law - Assault and Battery

Baldwin alleges that Defendants Smith and Tessier used force against him without need or provocation thereby constituting the tort of assault and battery under state law.  He further alleges that Defendant Barroni committed the tort of assault and battery by failing to intervene to prevent the misuse of force.  As discussed above, the Defendants argue that the state law claims should be dismissed because "even assuming *arguendo* that force was used on the plaintiff, it was lawful and justified by Department regulations, and there is no reasonable inference that the escort involved excessive force." [Defendants' Memorandum, p. 12.][20]

"Under Massachusetts law, an assault and battery is an intentional tort subjecting an actor to liability if: [a] he acts intending to cause a harmful or offensive contact with the person

---

[20] The Defendants have also requested that I decline to exercise supplemental jurisdiction over the remaining state tort claims should I have dismissed the federal claims.  28 U.S.C. § 1367(c)(3).  However, the Eighth Amendment claims remain outstanding against Defendants Smith, Tessier, and Barroni.

of the other or a third person, or an imminent apprehension of
such a contact, and [b] a harmful contact with the person of the
other directly or indirectly results." In re Limieux, 306 B.R.
433, 440 (Bankr. D. Mass. 2004) citing Waters v. Blackshear, 412
Mass. 589, 590 (1992)(citing Restatement 2d of Torts, § 13
(1965)).  In certain circumstances individuals, such as police
officers executing a lawful arrest, may be justified in exerting
force against another that would otherwise amount to an assault
and battery.  See, e.g., Julian v. Randazzo, 380 Mass. 391, 396
(1980)("The person attempting a valid arrest has the right to use
the force which is reasonably necessary to overcome physical
resistance by the person sought to be arrested[.]").  I am
satisfied Correctional Officers are similarly justified in using
reasonable force to carry out their duties.  See, e.g., Profitt
v. District of Columbia, 790 F.Supp. 304, 310 (D.D.C.
1991)("Legal authority to conduct the search is a valid defense
to a claim of assault" where the "the strip search and the
alleged visual body cavity search were conducted reasonably and
in accordance with the applicable Department of Corrections
regulations."); In re Riddle, 57 Cal.2d 848, 852 (1962) quoting
In re Ferguson, 55 Cal.2d 663, 673 (1961)("[C]ustodial officers
may use reasonable force upon a prisoner to enforce proper prison
regulations or 'where necessary to prevent a prisoner from doing
bodily harm to a prison official.'")

The relevant regulations in these circumstances are the

-34-

Massachusetts Department of Corrections' Use of Force
regulations, cited supra, which specifically provide that "an
employee may use reasonable force ("the least amount of force
necessary to carry out" the action) when it is necessary to ...
move an inmate who has refused a proper order by an employee[.]"
103 C.M.R. 505.07(1)(f), 505.06.  The "use of excessive force,"
that is "force which exceeds reasonable force or force which was
reasonable at the time its use began but was used beyond the need
for its application," 103 C.M.R. 505.06, or "the use of force as
punishment or discipline," is prohibited by 103 C.M.R. 505.08.
While these regulations do not themselves create a direct cause
of action for the use of excessive force, I view them as setting
the appropriate standard for the lawful and justifiable use of
force by correctional officers under Massachusetts tort law.

    In this case, it is clear that the Defendants' motion to
dismiss the assault and battery claims as to Defendants Smith and
Tessier must fail.  Assuming Baldwin's allegations in his
Complaint to be true, I cannot say that "it appears beyond doubt
that [he] can prove no set of facts in support of [his] claim
[against Defendants Smith and Tessier] which would entitle [him]
to relief." McLaughlin, 419 F.3d at 50 citing Conley, 355 U.S. at
46.  However, I will dismiss the state claim against Defendant
Barroni because Baldwin does not allege that Defendant Barroni
participated in the assault and battery and the failure to
intervene cannot amount to assault and battery under

Massachusetts law, absent conduct rising to liability as an aider

or an abetter.[21]  Baldwin also purports to sue Defendant Barroni

in his "supervisory and official capacities," [Complaint, ¶  6];

however, I find that this is not a situation where the allegedly

tortious actions of Tessier and Smith can be properly imputed to

their supervisor.

As with the Eighth Amendment claims, Defendants Smith and

Tessier have not made a preliminary showing that there are no

genuine issues of material fact with respect to Baldwin's state

law claims.  The Defendants do not dispute or deny that Defendant

Tessier used his shirt to strangle Baldwin causing marks on his

neck or that Defendants Tessier and Smith further assaulted him

causing swollen eyes, migraines and bruising to his face and

right hip.  Consequently, I find that there are genuine issues as

to whether Defendants Smith and Tessier did in fact assault and

---

[21] "While it has been held that separate tort liability does
not exist for simply aiding and abetting someone else in
committing a tort, as a general rule, one who counsels, advises,
abets, or assists in the commission by another of an actionable
wrong is responsible to the injured person for the entire loss or
damage."  86 C.J.S. Torts § 37 (footnotes omitted).  See also
Alberts v. Devine, 395 Mass. 59, 71 (1985) citing Duke v.
Feldman, 245 Md. 454, 457, 226 A.2d 345 (1966)("A person may held
liable as a principal for assault and battery if he, by any means
(words, signs, or motions) encouraged, incited, aided or abetted
the act of the direct perpetrator of the tort.  However, a person
who was present when an assault or battery was committed is not
liable as a participant in the absence of any action on his part
amounting to an encouragement of the tortious incident.  Silent
approbation or pleasure in an assault and battery inflicted by
another does not make a person, who has not encouraged or aided
the perpetrator, liable in damages[.]")(internal citations
omitted).

strangle Baldwin during the escort, whether Baldwin resisted or impeded the escort, and whether the assault and strangulation was "reasonably necessary" to overcome Baldwin's physical resistance, if he was resisting. <u>Julian</u>, 380 Mass. at 396.

Accordingly, I will deny the motions as to Defendants Smith and Tessier on the state law claim.  For the reasons discussed above in the context of Baldwin's Eighth Amendment claim for excessive force, I will, however, grant summary judgment on the assault and battery claim against all of the Defendants to the degree it is founded on the use of leg irons during the escort.

### III.  CONCLUSION

For the reasons set forth more fully above, I DISMISS the Complaint against Defendant Ford pursuant to Fed. R. Civ. P. 4(m); I GRANT the Defendants' motion for summary judgment as to all of the Defendants on the denial of medical care claim; I GRANT the Defendants' motion to dismiss as to Defendant Barroni on the assault and battery claim; I GRANT the Defendants' motion for summary judgment on the excessive force and assault and battery claims based on the use of leg irons; and I DENY the Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment as to Defendants Smith and Tessier on the remainder of the assault and battery claim, and as to Defendants Smith, Tessier, and Barroni on the remainder of the excessive force claim.

/s/ Douglas P. Woodlock
_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE