UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO.  05-10898-DPW

JOHN BALDWIN,

    Plaintiff,

v.

BRUCE TESSIER, *et al.*,

    Defendants.

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION.

Now come Bruce Tessier, Patrick Smith and Thomas Barroni, defendants in the above-captioned matter, and hereby respectfully oppose the plaintiff's motion to reconsider the Court's ruling dismissing Brian Ford for lack of service.  As grounds therefore, the defendants state as follows:

## PROCEDURAL AND FACTUAL BACKGROUND

The plaintiff initiated this litigation on April 27, 2005, and was granted *in forma pauperis* status on May 5, 2005, at which time the Court (Woodlock, J.) ordered summonses to issue.  See Docket Entries No. 2 & 4.  Fed.R.Civ.P. 4(m) provides one hundred and twenty (120) days (or four months) within which to make proper service of process.  In or about June 2005, the plaintiff requested the United States Marshals Service to serve the summonses on defendants. On or about June 16, 2005, just over a month after the Court ordered summonses to issue, the United States Marshals Service attempted service of the Complaint by certified mail on Brian Ford at the Massachusetts Correctional Institution – Cedar Junction ("MCI-Cedar Junction"), located in Walpole, Massachusetts.  See Pf.'s Mot. Reconsider, at Ex. D.  The plaintiff had

provided only a post office box address, and noted under the section for "other information" the address of the Department of Correction headquarters. Id. On or about June 17, 2005, the process was returned unexecuted. Id.

At the time that service was made, however, Brian Ford was not employed at MCI-Cedar Junction. See Docket Entry No. 15, at p.2, ¶5. Moreover, because the plaintiff failed to identify that Mr. Ford was an employee by using his title ("Correction Officer" or "Officer"), the MCI-Cedar Junction mailroom believed the mail was for a former inmate with the same name. Id. Accordingly, the mail was refused and the notation "released" was written on the envelope. Id.

On or about July 15, 2005, less than one month later, the defendants filed a Motion to enlarge time. See Docket Entry No. 15. Within that motion, counsel for defendants put both the Court and the plaintiff on notice that service had not been properly made and provided the correct address for Brian Ford, as well as further instructions to ensure that Mr. Ford received the process. Id. At the time of this motion, the plaintiff was still well within the one hundred twenty (120) day deadline within which to make service. Indeed, one purpose of the enlargement was to permit the plaintiff additional time to make service so that counsel for defendants could respond on behalf of all defendants in one dispositive motion. Id. at ¶¶7-8.

The docket indicates that the plaintiff took no steps to correct the improper service. See generally, Docket Sheet. On or about August 3, 2005, the undersigned counsel wrote a letter to the plaintiff concerning discovery he served on her clients. See Docket Entry No. 25, at ¶2 and Ex. B. In that letter, the undersigned stated "please be advised that until you complete service on Brian Ford he is not a party subject to interrogatories." Id. at Ex. B. On or about August 15, 2005, on the deadline requested in the enlargement, the defendants filed their motion to dismiss, or in the alternative, for summary judgment. See Docket Entry No. 21. Counsel once again

2

indicated that Mr. Ford had not been served, and <u>without waiving</u> such service, included him by reference in the arguments set forth in the motion. <u>Id</u>. at p.1, fn. 1.  Shortly thereafter, in an opposition to the plaintiff's request for default filed on August 31, 2005, the defendant <u>again</u> notified the plaintiff that Mr. Ford had not been served with the Complaint.  <u>See</u> Docket Entry No. 24, ¶3 and fn. 1.  Likewise, in a motion requesting an extension of time within which to respond to the plaintiff's discovery, the defendants reiterated that Mr. Ford had not been served.  <u>See</u> Docket Entry No. 25, ¶2.  Notably, on august 31, 2005, the plaintiff was <u>still</u> within the time to make proper service (assuming the count is made from the date that the Court ordered summonses to issue on May 5, 2005).

All told, counsel for defendants notified the plaintiff on five (5) different occasions that he must make proper service on Mr. Ford.  The docket indicates that the plaintiff took no steps to procure proper service on Mr. Ford.  On March 22, 2006, the Court (Woodlock, J.) dismissed the complaint against Mr. Ford pursuant to Mass.R.Civ.P.4(m).  On or about November 16, 2006, newly appointed counsel for the plaintiff move to reconsider the Court's dismissal of Mr. Ford.

## ARGUMENT

Fed.R.Civ.P. 4(m) provides that, if a plaintiff fails to procure service within the one hundred twenty (120) deadline, the Court may either dismiss an action without prejudice or direct that service be effectuated within a certain time.  In addition, "if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period."  Accordingly, the Court's dismissal of the Complaint against Mr. Ford was appropriate and within its discretion.  Moreover, the plaintiff has not shown <u>any</u> good cause for his failure to make proper service, and, therefore, is not entitled to an extension of time as now requested.

**I.   THE MERE FACT THAT SERVICE WAS ATTEMPTED BY THE U.S. MARSHALS SERVICE IS NOT "GOOD CAUSE" IN THIS CASE.**

Plaintiff first argues that, based solely on the fact that he procured service through the U.S. Marshals Office, he has good cause sufficient to require an extension of time within which to make service of process. Based on the circumstances in this case, however, that argument fails.

The plaintiff relies on three (3) cases for the proposition that reliance on the Marshals Service was good cause. See Ruddock v. Reno, 104 Fed. Appx. 204 (2d Cir. 2004); Moore v. Jackson, 123 F.3d 1082 (8th Cir. 1997); Abel v. Harp, 122 Fed. Appx. 248 (6th Cir. 2005). In each of these cases, the court found good cause where the plaintiff had relied to his detriment on the Marshals Service's duty to make proper service. Notably, however, none of these cases involve the situation where the plaintiff has knowledge that the Marshals Service has not completed service, but fails to take any steps to rectify the failure. The Abel court, however, in analyzing whether good cause existed, took into account the situation in Rochon v. Dawson, 828 F.2d 1107 (5th Cir.1987). In Rochon, the Fifth Circuit held that, "although an incarcerated plaintiff proceeding *in forma pauperis* may rely on service by the U.S. Marshals, he 'may not remain silent and do nothing to effectuate such service.' Abel, 122 Fed. Appx. at 252 (quoting Rochon, 828 F.2d. at 1110). In Rochon, the plaintiff was advised by the court that the defendant had not been served, and the plaintiff took no steps to correct the error. Rochon, 828 F.2d at 1110. The Rochon court went found that, at a minimum, the plaintiff must "request service upon the appropriate defendant and attempt to remedy any apparent service defects of which a plaintiff has knowledge." Id.; see Salas v. Tillman, 162 Fed.Appx. 918 (11th Cir. 2006)(summary judgment appropriate where plaintiff had notice of service problem and made no

4

attempt to correct it); Clay v. Allen, 87 Fed. Appx. 1000 (5th Cir. 2004) (same); Olsen v. Mapes, 333 F.3d 1199 (10th Cir. 2003) (plaintiff made sincere effort to comply with rule).

In this case, despite repeated notice from counsel for the defendants that service upon Mr. ford was incomplete, including detailed information on how to correct the improper service, all provided well within the deadline for service, the plaintiff took no steps whatsoever to correct the error. Accordingly, since the plaintiff was not entitled to remain silent and do nothing, the Court's determination that there was no good cause for extension of time and subsequent dismissal of the matter against Mr. Ford was appropriate.

## II. THE TOTALITY OF THE CIRCUMSTANCES DO NOT REQUIRE THE COURT TO GRANT A DISCRETIONARY EXTENSION.

### A. The Plaintiff's *Pro Se* Status Does Not Excuse His Compliance With The Rules of Procedure.

The plaintiff presses his prior status as a *pro se* litigant as a circumstance requiring the Court to extend his time within which to procure service. See Pf.'s Brief, p.6. Notably, however, the cases cited above at Section I all involve *pro se* litigants, and still required that the litigant take some action. Moreover, it is well-established that *pro se* status does not confer an excuse for mistakes made without the benefit of an attorney. The Supreme Court has stated:

> [w]hile we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed, see Haines v. Kerner, 404 U.S. 519(1972); Estelle v. Gamble, 429 U.S. 97(1976), and have held that some procedural rules must give way because of the unique circumstance of incarceration, see Houston v. Lack, 487 U.S. 266 (1988) ( *pro se* prisoner's notice of appeal deemed filed at time of delivery to prison authorities), we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.

McNeil v. U.S., 508 U.S. 106 (1993). Indeed, a claim by the plaintiff that he did not understand the consequences of failure to make proper service is disingenuous at best. As a cursory check of the state and federal court on-line dockets indicates, the plaintiff is no stranger to *pro se*

5

litigation. See Baldwin v. DuBois, Suffolk Sup. Ct. No. 96-05332; Baldwin v. Stubbert, Norfolk Sup. Ct. No. 98-02025 (appeal taken in Baldwin v. Stubbert, 99-P-1592); Baldwin v. Maloney, Suffolk Sup. Ct. No. 97-04043; Baldwin v. Marshall, U.S.D.C. No. 98-CV-10865 (D. Mass.); Baldwin v. Stubbert, U.S.D.C. No. 98-CV-11137 (ultimately dismissed for failure to make service in 1999); Baldwin v. Maloney, Worcester Sup. Ct. No. 03-571; and Baldwin v. Mulligan, Worcester Sup. Ct. No. 04-1222 (in which plaintiff was warned that improper service would result in dismissal and granted additional time). Indeed, in at least two cases, he was warned that failure to procure proper service would result in dismissal, and appears to have suffered such a dismissal in Baldwin v. Stubbert, supra.

Accordingly, this Court need not take the plaintiff's *pro se* status as meriting a discretionary extension of time. Ignorance of the rules of procedure, even by a *pro se*, is no excuse.

### B.    The Plaintiff's Finances Do Not Excuse His Compliance With The Rules of Procedure.

The plaintiff's claim that his finances prevented him from correcting the error in service upon Mr. Ford is, again, disingenuous at best. As stated clearly in the cases cited by the plaintiffs, and in the Rochon case discussed above, it was incumbent upon the U.S. Marshals Service to make proper service in the first instance. Once the plaintiff was advised that service was improper, his only obligation was to make some effort to correct the error. Rochon, 828 F.2d at 1110. As the burden was on the Marshals Service to effectuate proper service, the plaintiff merely needed to inform the Marshals Service of the error and provide the detailed information given to him and the Court by the undersigned counsel. Presumably, the Marshals Service would have retried certified mail to the proper address, at their own expense. Even if it

6

had not, however, it would have been enough that the plaintiff had made at least an effort to comply.  See Olsen, 333 F.3d 1199 (10th Cir. 2003).

Accordingly, the plaintiff's limited access to funds does not require that the court excuse his failure to comply with the service requirements.

### C.     The Prejudice to Mr. Ford Is Significant.

Contrary to the plaintiff's assertions, the prejudice to the plaintiff is significant.  Statutes of limitations were created expressly to provide some time limit within which plaintiffs must give notice to the defendant of their claims.  In this case, the plaintiff filed his suit on May 5, 2005 concerning incidents that took place on April 2, 2003, well within the three-year statute of limitation afforded to civil rights and tort claims.  He was first notified of the correct means necessary to make proper service on Mr. Ford in July 2005.  On that date, therefore, he still had more than eight (8) months within which to effectuate service within the statute of limitations.  Moreover, as the plaintiff correctly notes, on the date the case was dismissed, a short period of time to effectuate service within the statute of limitations still remained.

Mr. Ford is entitled to the enjoyment of the same statute of limitations protection enjoyed by any other person – timely notice of suit.  It does not matter whether the Legal Division will represent the defendant, nor that the Department had notice of the claims.  Mr. Ford had no notice of these claims, and continues to have no notice to this date.  The Department is not a party to this litigation, nor did it have any obligation to notify Mr. Ford that he "might" become a defendant in this suit.

Contrary to the plaintiff's assertion, the circumstances of this case do not weigh in his favor, and the extension of time within which to effectuate service would not be a "modest" extension.  Counting from May 5, 2005, the plaintiff's time within which to make service ended

7

on September 5, 2005.  His motion requesting an extension of service is filed <u>more than a year</u> after the time to make service has elapsed, and <u>more than seven months</u> after the statute of limitations in this matter has elapsed.  Accordingly, this Court should deny the plaintiff's request.

## CONCLUSION

WHEREFOR, the defendants respectfully request that this Court DENY the plaintiff's Motion to Reconsider and DENY the plaintiff's request for an extension of time within which to make service upon any other parties, including Mr. Ford.

Dated:  November 27, 2006                    Respectfully submitted,

                                                          NANCY ANKERS WHITE
                                                          Special Assistant Attorney General

                                                          ___/s/ Wendy C. Weber_____
                                                          Wendy C. Weber, Counsel
                                                          BBO No. 633950
                                                          Department of Correction
                                                          Legal Division
                                                          70 Franklin Street, Suite 600
                                                          Boston, MA 02110-1300
                                                          (617) 727-3300 x189

## CERTIFICATE OF SERVICE

I hereby certify that on this date a true copy of the above document was served on the counsel appointed for plaintiff, Michael Shin, Esq., 200 Clarendon Street
27th Floor, Boston, MA 02116-5021, by first class mail.

Dated: November 27, 2006                    ___/s/ Wendy C. Weber_____
                                                                      Wendy C. Weber, Counsel